## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK
## MANHATTAN DIVISION

| | | |
|---|---|---|
| S.A.M. MANAGEMENT CO., INC. d/b/a HOFFMAN MANAGEMENT, individually and on behalf of all others similarly situated, | ) ) ) ) ) | Civil Action No. 1:22-CV-3494 |
| Plaintiff, | ) ) | |
| v. | ) ) | JURY TRIAL DEMANDED |
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., | ) ) ) ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff S.A.M. Management Co., Inc. d/b/a Hoffman Management ("Plaintiff"), individually and on behalf of all others similarly situated, alleges as and for its Class Action Complaint (the "Action") against Defendant Consolidated Edison Company of New York, Inc. ("Defendant" or "Con Edison"), upon personal knowledge as to itself and its own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation made by its attorneys, as follows:

## NATURE OF THE ACTION

1.      This action seeks to redress Con Edison's charging of an improper, higher gas rate to thousands of New York customers in violation of the plain and unambiguous terms of Con Edison's gas tariff.

2.      Con Edison is bound by the terms of its gas tariff.  Pursuant to the terms of its tariff, Con Edison may only charge a customer a gas rate under the SC-3 (Residential and Religious –

Heating Firm Sales Service) rate classification if the customer meets the criteria for the SC-3 classification as set forth in the tariff.   Otherwise, the customer is ineligible for the SC-3 classification, and must instead be charged a rate under the SC-2 (General Firm Sales) rate classification.

3.      In nearly every instance, the SC-2 rate classification is the more economical gas rate classification for the customer as compared to the SC-3 rate classification, and thus it is most advantageous for the customer to be billed under the SC-2 rate instead of the SC-3 rate.

4.      However, contrary to the express provisions of its gas tariff (which Con Edison itself authored), Con Edison has improperly billed thousands of customers who do not meet the criteria for the SC-3 rate classification (and who instead should receive gas service under the SC-2 rate classification) a SC-3 gas rate.  This has resulted in Con Edison generating millions in unjust revenues from unsuspecting customers who are unaware that Con Edison is billing them under an improper rate classification.

5.      Con Edison is well aware of its unlawful and deceptive practices in overcharging customers by improperly assigning them a SC-3 rate classification despite the customer being ineligible for a SC-3 rate.  In fact, Con Edison has been notified on at least seven occasions of its error in charging a SC-3 gas rate to a customer that is ineligible for the SC-3 rate.  In each of these seven instances, Con Edison prospectively corrected the customer's billing to the proper SC-2 gas rate; however, Con Edison has failed to retroactively correct past gas rate billings and refund customers their overcharges.

6.      Therefore, this action is brought on behalf of a class of Con Edison customers who have been improperly charged a gas rate under the SC-3 rate classification by Con Edison when the customer is in fact ineligible for the SC-3 rate classification as set forth in plain and

unambiguous provisions of Con Edison's gas tariff, and seeks on behalf of Plaintiff and the putative class actual damages and refunds, injunctive relief, attorneys' fees, and costs as provided by law.

## PARTIES

7.     Plaintiff S.A.M. Management Co., Inc. d/b/a Hoffman Management is a corporation organized under the laws of New York with its principal office in New York, New York.

8.     Consolidated Edison Company of New York, Inc. is a corporation organized under the laws of New York with its principal office in New York, New York.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction of the claims asserted herein pursuant to 28 U.S.C. § 1332(d)(2)(A) in that the amount in controversy exceeds the sum or value of $5,000,000.00 exclusive of interest and costs, and is a class action in which, upon information and belief, some members of the putative plaintiff class are citizens of States different from Defendant as of the filing date of this complaint.

10.    Upon information and belief, the putative class consists of thousands of Con Edison customers who have been improperly charged a SC-3 rate, and most members of the putative plaintiff class are corporate entities which own or manage mixed-use buildings with both a residential and non-residential component.

11.    Plaintiff is informed and believes that one or more unnamed members of the putative class are citizens of States different from Defendant as of the filing date of this complaint, such as a corporation with a principal place of business and a state of incorporation in a state other than New York.

12.     Con Edison has consented to jurisdiction in this District pursuant to its General Terms of Service.[1]

13.     This Court has general personal jurisdiction over Defendant.  Defendant is a corporation organized under the laws of New York with its principal office in New York, New York.

14.     Venue is proper pursuant to 28 U.S.C. § 1391.  Plaintiff and Defendant each have a principal office in this District.

## SUBSTANTIVE ALLEGATIONS

### Con Edison's Gas Rate Service Classifications

15.     Con Edison is one of the nation's largest energy delivery companies and provides gas service to customers in Bronx, Queens, New York and Westchester Counties, New York.

16.     Con Edison provides gas service to customers pursuant to the terms and conditions of its gas tariff filed with the New York Public Service Commission.

17.     Con Edison's gas tariff "takes on the full force and effect of law and governs every aspect of" its rates and practices. *Lee v. Consolidated Edison Co. of N.Y.,* 98 Misc.2d 304, 305–306, 413 N.Y.S.2d 826 (1978).

18.     The gas tariff is "part of the contract between the customer" and Con Edison. *Krasner v. New York State Elec. & Gas Corp.,* 90 A.D.2d 921, 921–922, 457 N.Y.S.2d 927 (1982).

19.     The rates that Con Edison charges to customers are dependent upon the service classification assigned by Con Edison, and include Residential and Religious Firm Service (SC-1), General Firm Sales Service (SC-2), Residential and Religious Service (SC-3), Natural Gas Vehicle Service (SC-14).

---

[1] Ex. A., www.coned.com/en/terms-and-conditions.

20.     Con Edison is responsible for determining the appropriate service classification for each customer based on eligibility requirements that Con Edison creates and are approved by the New York Public Service Commission.

21.     When customers apply for gas service from Con Edison, Con Edison assigns the customer a gas rate classification based upon the use and characteristics of the subject building or unit.

22.     The assignment of a service classification for a customer is not a matter of choice for Con Edison, as the service classifications are dictated by Con Edison's eligibility requirements in the gas tariff. *See Lee*, 98 Misc.2d at 305-306 ("neither party can depart for the measure of compensation or standard of liability contained" in a filed tariff).

23.     The gas tariff provides that any use of gas by a Con Edison customer shall be billed under the SC-2 service classification (General Firm Sales Service) <u>unless</u> the customer otherwise meets the criteria for gas service under either the SC-1, SC-3, or SC-14 service classifications:

> **Service Classification No. 2**
> **General Firm Sales Service**
>
> **Availability of Service.** <u>Any use of gas by any Customer except where the Customer is eligible for service under Service Classifications Nos. 1, 3, or 14</u> subject to the requirements of this Classification, the Company's Sales and Transportation Operating Procedures, and the other applicable provisions of this Rate Schedule, provided however, that religious organizations, community residences that are supportive living facilities or supervised living facilities, and veterans' posts or halls eligible for service under SC 1 or 3 may elect to take service under this Service Classification.

(Con Edison PSC No: 9 Gas, Leaf 230) (emphasis added).

24.     Thus, pursuant to the tariff, unless the customer otherwise meets the criteria for gas service under either the SC-1, SC-3, or SC-14 service classifications, a customer is to be placed on the SC-2 rate.

25.     Customers only meet the criteria for gas service under the SC-1 service classification (Residential and Religious Firm Service) for single-family dwellings and for other circumstances not applicable to the subject matter of this action. (Con Edison PSC No: 9 Gas, Leaf 225).

26.     Customers only meet the criteria set forth in the tariff for gas service under the SC-14 service classification (Natural Gas Vehicle Service) for fueling natural gas vehicles, which is not applicable to the subject matter of this action. (Con Edison PSC No: 9 Gas, Leaf 351).

27.     Customers meet the criteria set forth in the tariff for gas service under the SC-3 service classification (Residential and Religious – Heating Firm Sales Service) for residential buildings that are also used to conduct a business or other activity non-residential in nature, under certain circumstances:

> **Service Classification No. 3**
> **Residential and Religious – Heating Firm Sales Service**
>
> **Availability of Service** (service is available under this Service Classification to Customers who meet this Service Classification, the Company's Sales and Transportation Operating Procedures, and the other applicable provisions of the Rate Schedule)
>
> All residential uses and purposes where gas is used for space heating, when the gas is supplied directly by the Company:
>
> […]
>
> (2) to any multiple dwelling used predominately for residential occupancy where the gas is used for space heating requirements of the building, inclusive of any portions thereof which are designed for or used as a store, business office, or any other commercial or industrial activity provided that the cubical content of such non-residential space does not exceed 25 per cent of the cubical content of the building. Where gas is used for such space heating requirements, it is also available for central water heating, incineration and the operation of similar building equipment by the landlord for the common benefit of the residential and nonresidential occupants of the building and for redistribution to residential tenants or occupants for cooking. Where gas is used for both the space heating requirements of the building and is redistributed for non-heating

uses and purposes within individual flats or apartments in a multiple-family dwelling, the account must be established in the name of the owner.

[…]

(Con Edison PSC No: 9 Gas, Leaf 236).

28.     The tariff further provides exceptions for when a residential building also used to conduct a business or other activity non-residential in nature <u>does not</u> meet the criteria for the SC-3 service classification:

**Service is Not Available Under [SC-3] Service Classification**

(1) Where any part of the residential dwelling or building, flat, apartment or sleeping space used by the Customer or an employee of the Customer is also used to conduct business or any activity non-residential in character and it is not metered separately and billed under another appropriate Service Classification, provided, however, that any incidental nonresidential activities conducted by occupants of the residence that meet all the following conditions shall not preclude service from being supplied under the Service Classification:

(a) the non-residential activity does not change the character or outward appearance of the residence;

(b) the non-residential activity is performed solely by occupants of the residence; and

(c) the non-residential activities do not require use of more than 25 percent of the floor space of the residence and, in a multi-room residence, no more than one room is reserved for the non-residential activities.

[…]

(Con Edison PSC No: 9 Gas, Leaf 239) (emphasis added).

29.     In other words, under Leaf 239(1), entities are not eligible for gas service rates under the SC-3 service classification where any part of the building is used to conduct non-residential activity, is not metered separately, is billed under another appropriate service classification; however, an entity that satisfies the above are eligible for the SC-3 service classification only if the nonresidential activities conducted by the occupants in the residence meet

all of the conditions outlined in Leaf 239(1)(a)-(c).

30.     Thus, under the plain and unambiguous provisions of Con Edison's tariff, a variety of exceptions exist for when a residential building also used to conduct a business or other activity non-residential in nature <u>does not</u> meet the criteria for a SC-3 gas rate, and therefore must instead be charged a SC-2 gas rate.

31.      For example, the tariff provides that a customer does not meet the criteria for gas service under the SC-3 service classification when the customer (or an employee of the customer), who is not an occupant of a residence of the building, uses the building for a business or other activity non-residential in nature that is not separately metered:

> **Service is Not Available Under [SC-3] Service Classification**
>
> (1) Where any part of the residential dwelling or building, flat, apartment or sleeping space <u>used by the Customer or an employee of the Customer</u> is also used to conduct business or any activity non-residential in character and it is not metered separately and billed under another appropriate Service Classification, provided, however, that any incidental nonresidential activities conducted <u>by occupants of the residence</u> that meet all the following conditions shall not preclude service from being supplied under the Service Classification:
>
> > (a) the non-residential activity does not change the character or outward appearance of the residence;
> >
> > (b) <u>the non-residential activity is performed solely by occupants of the residence</u>; and
> >
> > (c) the non-residential activities do not require use of more than 25 percent of the floor space of the residence and, in a multi-room residence, no more than one room is reserved for the non-residential activities.
>
> […]

(Con Edison PSC No: 9 Gas, Leaf 239) (emphasis added).

32.     For illustration, a customer does not meet the criteria for gas service under the SC-3 classification for an apartment building where the customer (or an employee of the customer)

operates a laundromat in the building, the customer (and its employees) is not a resident of the building, and the laundromat is not separately metered and billed under another service classification.  The customer should then instead be billed for gas service under the SC-2 service classification.  However, if the customer, or one of its employees, were also residents of the building, then the building would be eligible for gas service under the SC-3 service classification (provided that other criteria is also met[2]).

33.     Consistent with its tariff, Con Edison advertises to consumers that gas service under the SC-3 service classification is proper only when there is incidental non-residential gas use conducted by <u>occupants of a residence of the building</u>:

> GS3 applies to residential gas space heating used in multi-unit buildings. Incidental nonresidential gas use conducted by <u>occupants of the residence</u> is permitted if certain conditions are met.

(Ex. B., Con Edison, *Your Rights and Responsibilities as a Non Residential Customer*, https://www.coned.com/-/media/files/coned/documents/accountandbilling/nonresrights-english.pdf).

34.     Likewise, Con Edison also advertises to its consumers that gas service under the SC-2 service classification is proper for residential premises <u>that are not the primary residence of the owner</u>:

> GS2 is a service classification applies to service used by most commercial gas customers for heating, cooking, and other purposes. GS2 also applies to most residential premises <u>that are not the primary residence of the owner</u>.

(*Id.*) (emphasis added).

### <u>Con Edison's Improper Charge of SC-3 Gas Rates to Customers Who Do Not Meet the Criteria for SC-3 Service Under the Tariff</u>

35.     Notwithstanding the plain and unambiguous language of its tariff, Con Edison has

---

[2] *See* the requirements of 1(a)-(c) of Leaf 239.

routinely assigned customers a SC-3 gas rate to customers who in fact do not meet the criteria for a SC-3 gas rate.

36.     For example, Con Edison routinely assigns residential buildings used by a customer (or an employee of the customer) to conduct business or other non-residential activity, that is not separately metered, a gas rate under the SC-3 service classification, even though pursuant to the gas tariff, the customer is not an occupant of a residence of the building and is otherwise not eligible for a SC-3 service classification.

37.     In fact, upon information and belief, Con Edison has assigned a SC-3 service classification to certain customers that are entirely commercial in nature, with no residential component at all.

38.     One potential reason for Con Edison's improper assignment of the SC-3 service classification for non-eligible entities is Con Edison's own service application. Con Edison's service application contains relevant questions regarding the criteria for gas service under the SC-3 rate classification, such as whether a business will be conducted by the customer at the premises, and whether the customer or its employees plan to live at the premises:

**PART B.  SERVICE CLASSIFICATION**

1. **SERVICE(S) BEING REQUESTED:** (Check all that apply)     ☐ Electric          ☐ Gas
2. **DATE YOU ARE RESPONSIBLE FOR ACCOUNT:** (Date of deed or date lease commences)_____ / _____ / _____
3. If this is a residence, do you plan to conduct a business here?     ☐ Yes          ☐ No
4. What percent of the total space will be used for business purposes?_____%
5. Do you or your employees plan to live at this premises?     ☐ Yes          ☐ No
6. If this is not a residence, do you plan to use service primarily for residential purposes?     ☐ Yes     ☐ No

39.     However, despite receiving this information on the customer's service application, in addition to having the benefit to cross check such information by virtue of publicly available information such as the Certificate of Occupancy, or the site visits conducted by Con Edison during the monthly meter readings, and for other reasons that require a site visit, such as a meter test,

meter exchange, cranking of the meter, for example, Con Edison still improperly charges certain customers a SC-3 gas rate despite the customer not meeting the criteria for the SC-3 rate set forth in the tariff.  For example, a residential building used by an customer (or an employee of the customer) not an occupant of a residence of the building to conduct business or other non-residential activity, that is not separately metered would not be eligible for SC3 service.

40.    By inappropriately charging customers a SC-3 gas rate despite the customer not meeting the criteria for the SC-3 classification pursuant to the tariff, Con Edison has been able to generate windfall revenues, as in nearly all instances, the SC-2 rate classification is the more economical gas rate for the customer.

41.     For illustration, under Con Edison's current gas rates, service under the SC-3 service classification is substantially more expensive than service under the SC-2 service classification for all usage above the first 3 therms of gas per month:

| Rate | Service Classification No. 2 General Firm Sales Service (Rate I) [3] | Service Classification No. 3 Residential and Religious - Heating Firm Sales Service |
|---|---|---|
| For the First 3 therms (or less) | $34.80 | $23.80 |
| For the next 87 therms | 101.21 cents per therm | 125.71 cents per therm |
| For the next 2,910 therms | 52.21 cents per therm | 95.62 cents per therm |
| For excess over 3,000 therms | 35.98 cents per therm | 73.61 cents per therm |

42.    Based on Con Edison's own data, an average gas-heated residence uses approximately 162 therms of gas per month during the winter months.[4]  Thus, for any occupied

_____

[3] Additional base rate tiers on the SC-2 schedule are also less than the SC-3 base rate above the first 3 therms of gas usage per month.

[4]        https://www.coned.com/en/about-us/media-center/news/20211101/con-edison-reminds-

building, the SC-2 rate is the more economical rate than the SC-3 rate in nearly all, if not in fact all, instances.

43.     Con Edison is aware of its practices in overcharging such customers under an improper SC-3 gas rate classification when the customer should actually be charged a gas rate under the more economical SC-2 gas rate classification.

44.     In fact, on at least seven occasions, upon the demand of a customer with a residential building used by an customer (or an employee of the customer) not an occupant of a residence of the building to conduct business or other non-residential activity, that is not separately metered, Con Edison has adjusted the customer's service classification from SC-3 to the proper SC-2 classification.

45.     However, Con Edison has refused to correct gas rate billings on a retroactive basis under the improper SC-3 gas rate service classification for any customers (included the seven accounts which had their gas rate changed to a proper SC-2 rate on a prospective basis).

46.      The interpretation of the relevant provisions of Con Edison's gas tariff do not require any special competence or expertise regarding gas tariffs and rates and is within the conventional experience of this Court, as the language of the gas tariff speaks for itself in plain and unambiguous terms.

47.     There is no ambiguity in the relevant provisions of the Con Edison gas tariff, and application of the plain and unambiguous language of these relevant provisions require no fact-finding or technical expertise.[5]

---

customers-to-conserve-and-save-money-this-
winter#:~:text=The%20average%20residential%20gas%2Dheating,and%20assumes%20normal
%20winter%20weather.

[5] Even if there was ambiguity in the tariff (which there is not), such ambiguities must be strictly construed against Con Edison as the drafter of the tariff. *Maro Leather Co. v. Aerolineas*

48.     Upon information and belief, no prior application has been made to any other tribunal, agency, or commission as to Con Edison's improper charge of a SC-3 gas rate to customers as set forth in this action and collection of unjust windfall venues, nor are these issue pending before any other tribunal, agency, or commission.

## Con Edison Charged Plaintiff a Gas Rate Under the SC-3 Classification Despite Plaintiff's Building Not Meeting the Criteria for a SC-3 Gas Rate

49.     Plaintiff is a Con Edison gas customer for the building located at 300 West End Avenue, New York, New York 10023, which contains 33 residential apartment units.

50.     Plaintiff uses the building to conduct business and other revenue activities non-residential in character, including a laundry, a maintenance shop, and a parking garage.

51.     Plaintiff's non-residential use in the building is not separately metered.

52.     Plaintiff's building is eligible to receive gas service under the SC-2 service classification.

53.     Neither plaintiff nor any of its employees are occupants of the apartment residences of the building.

54.     Accordingly,  the building is ineligible to receive gas service under the SC-3 service classification.

55.     Notwithstanding the fact that the building is only eligible to receive gas service under the SC-2 service classification, Con Edison has elected to charge Plaintiff with gas service for the building under the SC-3 service classification.

56.     Con Edison's improper rate service classification has resulted in a Plaintiff paying Con Edison significantly higher gas rate charges than Plaintiff should have been properly charged

---

*Argentinas*, 142 A.D.2d 265, 270, 535 N.Y.S.2d 982 (1988), *appeal dismissed* 85 N.Y.2d 837, 624 N.Y.S.2d 365, 648 N.E.2d 784, *cert. denied*, 514 U.S. 1108, 115 S.Ct. 1958, 131 L.Ed.2d 850.

under a proper SC-2 gas rate service classification.

57.     Con Edison continues to improperly bill Plaintiff's building under the incorrect SC-3 gas rate service classification.

58.     Plaintiff has requested that Con Edison refund Plaintiff the difference in its billings between the higher SC-3 gas rate service classification and the proper SC-2 gas rate service classification, and Con Edison has denied these requests.

59.     Con Edison has received windfall overcharge revenues by improperly charging Plaintiff's building under the incorrect SC-3 service classification in violation of the plain and unambiguous terms of its gas tariff.

## CLASS ALLEGATIONS

60.     Pursuant to Federal Rules of Civil Procedure 23(b)(3), Plaintiff brings this action on behalf of itself and all other similarly situated (the Class").  Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All Con Edison customers in the State of New York who, at any time within the applicable statute of limitations preceding the filing of this action through and including the date of judgment, have been charged a SC-3 gas rate by Con Edison but meet the disqualifications under Leaf 239(1) and do not meet the exceptions set forth in Leaf 239(1)(a)-(c).

61.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed.

62.     Excluded from the Class is Con Edison; any parent, subsidiary, or affiliate of Con Edison; any entity in which Con Edison has or had a controlling interest, or which Con Edison otherwise controls or controlled; and any officer, director, legal representative, predecessor, successor, or assignee of Con Edison.

63.     This action is properly maintainable as a class action.  The proposed Class is so

numerous that joinder of all members, whether otherwise required or permitted, is impracticable. The names and addresses of potential Class members are readily identifiable through the business records maintained by Con Edison, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

64.    There are questions of law or fact common to all Class Members that predominate over any questions affecting only individual members.  Specifically, the common questions of fact and law include:

  a.  Whether Con Edison improperly charged gas rates under the  SC-3 to those who are ineligible for gas service under SC-3;

  b.  whether Con Edison violated the New York General Business Law, § 349;

  c.  whether Con Edison breached its contract to provide gas service to Plaintiff and the Class;

  d.  whether Con Edison has made fraudulent misrepresentations to Plaintiff and the Class;

  e.  whether Con Edison was unjustly enriched by charging and collecting improper SC-3 gas rates from Plaintiff and the Class;

  f.  whether Plaintiff and the Class should be refunded the improper SC-3 gas rates charged and collected by Con Edison pursuant to the doctrine of money had and received;

  g.  whether Plaintiff and the Class have sustained damages and, if so, the proper measure thereof; and

  h.  whether Con Edison should be enjoined from continuing to charge and collect SC-3 gas rates from customers who do not meet the criteria for the SC-3 service

classification set forth in Con Edison's gas tariff.

65.    The proposed lead Plaintiff's claims are typical of those of the proposed Class because the proposed lead Plaintiff's claims are based upon the same facts and circumstances that give rise to the claims of the other Class Members and are based upon the same predominate legal theories.

66.    The representative Plaintiff can adequately and fairly represent the Class.   No conflict of interest exists between the representative Plaintiff and the Class Members because Con Edison's alleged conduct affected them similarly.

67.    The Plaintiff and its chosen attorneys are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this complaint so as to be able to assist in its prosecution.  In addition, the Plaintiff's attorneys are competent in the areas of law relevant to the Complaint and have sufficient experience and resources to vigorously represent the Class members and prosecute this action.

68.    A class action is superior to any other available method for adjudicating this controversy.  The proposed class is (i) the surest way to fairly and expeditiously compensate so large a number of injured persons that constitute the Class, (ii) to keep the courts from being inundated by hundreds or thousands of repetitive cases, and (iii) to reduce transactions costs so that the injured Class Members can obtain the most compensation possible.  Accordingly, class treatment presents a superior mechanism for fairly resolving similar issues and claims without repetitious wasteful litigation relevant to this action.

### CLAIMS FOR RELIEF

### COUNT I
**(Violation of New York General Business Law, § 349)**

69.    Plaintiff incorporates by reference the preceding allegations as if fully set forth

16

herein.

70.     New York General Business Law § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state…"

71.     The conduct of Con Edison alleged herein constitutes recurring, unlawful deceptive acts and practices in violation of New York General Business Law § 349, and as such, Plaintiff and Class Members are entitled to monetary damages and injunctive relief against Con Edison, enjoining it from charging Plaintiff and Class Members with improper SC-3 gas rates in violation of the plain and unambiguous language of Con Edison's gas tariff.

72.     The conduct of Con Edison as alleged herein is "consumer oriented", as it has a broad-based impact on the public or consumers at large.

73.     The conduct of Con Edison as alleged herein are materially deceptive, inaccurate, and misleading, as Con Edison has charged Plaintiff and Class Members with a gas rate that is in violation of the plain and unambiguous language of Con Edison's gas tariff, as well as Con Edison's statements to customers.

74.     Con Edison has been notified, on at least seven occasions, of its improper charge of a SC-3 gas rate to customers for a residential building that is also used by the customer (or an employee of the customer) who is not an occupant of a residence of the building for a business or other activity non-residential in nature, and such business or other non-residential activity is not metered separately and billed under another service classification, yet Con Edison has refused to cease its unlawful conduct as to Plaintiff and Class Members.

75.     Plaintiff and Class Members have been injured as they have been required to pay an improper, more expensive gas rate to Con Edison for their buildings.

76.     As a result of Con Edison's recurring, unlawful deceptive acts and practices in violation of New York General Business Law § 349, Plaintiff and Class Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Con Edison's unlawful conduct, interest, and attorneys' fees and costs.

## COUNT II
### (Breach of Contract)

77.     Plaintiff incorporates by reference the preceding allegations as if fully set forth herein.

78.     Valid and enforceable contracts exist between Con Edison and Plaintiff and Class Members for the provision of gas service.

79.     The provisions of Con Edison's gas tariff are part of the contracts between Con Edison and its customers. *Krasner v. New York State Elec. & Gas Corp.,* 90 A.D.2d 921, 921–922, 457 N.Y.S.2d 927 (1982).

80.     Con Edison is bound by the provisions of its gas tariff in fulfilling its contractual obligations to customers.

81.     Con Edison has breached its contracts with Plaintiff and Class Members by charging Plaintiff and Class Members a gas rate under the SC-3 rate classification when Plaintiff and Class Members are in fact ineligible for a SC-3 rate classification under the plain and unambiguous provisions of Con Edison's gas tariff.

82.     Plaintiff and Class Members have been injured by Con Edison's improper charge of a SC-3 rate, as Plaintiff and Class Members should have properly been charged a lower gas rate under the SC-2 service classification.

83.     By reason of the foregoing, Con Edison is liable to Plaintiff and Class Members for

the damages they have incurred as a result of Con Edison's actions, the amount of which shall be determined at trial.

## COUNT III
### (Fraud by Concealment)

84.     Plaintiff incorporates by reference the preceding allegations as if fully set forth herein.

85.     Con Edison has concealed material facts from Plaintiff and the Class Members that Plaintiff and Class Members have been improperly charged higher gas rates under the SC-3 service classification despite not meeting the criteria for a SC-3 rate pursuant to Con Edison's gas tariff. This concealment includes, but is not limited to, the following:

      a.  Failing to adequately disclose to Plaintiff and Class Members that they were being charged under an inappropriate service classification, resulting in excessive gas rate billings to Plaintiff and Class Members;

      b.  Failing to adequately disclose to Plaintiff and Class Members that it had made errors in charging a SC-3 gas rate to customers who in fact did not meet the criteria for the SC-3 classification despite being notified of its error on at least seven occasions dating back to 2017; and

      c.  Failing to adequately disclose to Plaintiff and Class Members that their premises or buildings did not meet the criteria for a SC-3 gas rate despite having knowledge of the characteristics of these premises and buildings.

86.     Con Edison charged gas rates to Plaintiff and Class Members, and continued to charge gas rates to Plaintiff and Class Members, without adequately disclosing these material facts.

87.     The information concealed by Con Edison was material.

88.     Con Edison's material omissions were intentional or reckless and were committed

to protect Con Edison's profits.

89.     Con Edison had a duty to disclose to Plaintiff and Class Members the material information it concealed because this information was only readily known and accessible to Con Edison, Con Edison has superior knowledge and access to the facts, and Con Edison knew the facts were not known to, or reasonably discoverable by, Plaintiff and Class Members.

90.     Plaintiff and Class Members have been damages by Con Edison's omission of these material facts, as Plaintiff and Class Members have paid significantly higher gas rates as a direct result of the concealment.

91.     By reason of the foregoing, Con Edison is liable to Plaintiff and Class Members for the damages they have incurred as a result of Con Edison's actions, the amount of which shall be determined at trial.

<u>**COUNT IV**</u>
**(Unjust Enrichment)**

92.     Plaintiff incorporates by reference the preceding allegations as if fully set forth herein.

93.     By engaging in the conduct described herein, Con Edison has unjustly enriched itself and received a benefit above what it is properly entitled to had it charged Plaintiff and Class Members the proper SC-2 gas rate.

94.     Con Edison has been unjustly enriched at the expense of Plaintiff and Class Members.

95.     It would be unjust and inequitable for Con Edison to retain the payments made by Plaintiff and Class Members pursuant to the improper SC-3 gas rate.

96.     By reason of the foregoing, Con Edison is liable to Plaintiff and Class Members for the damages they have incurred as a result of Con Edison's actions, the amount of which shall be

determined at trial.

## COUNT V
### (Money Had and Received)

97.     Plaintiff incorporates by reference the preceding allegations as if fully set forth herein.

98.     By charging Plaintiff and Class Members a higher, improper gas rate under the SC-3 service classification, Con Edison has received money rightfully belonging to Plaintiff and Class Members.

99.     Con Edison has benefited from the receipt of money that rightfully belongs to Plaintiff and Class Members.

100.    Under the principles of good conscience, Con Edison should not be permitted to retain the money that rightfully belongs to Plaintiff and Class Members.

101.    By reason of the foregoing, Con Edison is liable to Plaintiff and Class Members for the damages they have incurred as a result of Con Edison's actions, the amount of which shall be determined at trial.

WHEREFORE, Plaintiff respectfully requests that the Court:

(a) Issue an order certifying the Class defined above, appointing Plaintiff as Class representative, and designating its Attorneys as Class Counsel;

(b) Find that Con Edison has committed violations of the law alleged herein;

(c) Enter an order granting monetary relief and damages on behalf of the Class, the amount of which is to be determined at summary judgment or trial;

(d) Render an award of treble damages and/or punitive damages;

(e) Enter an order granting all appropriate relief on behalf of the Class;

(f) Enter judgment including interest, costs, reasonable attorneys' fees, and expenses; and

(g) Grant all such other relief as the Court deems appropriate.

## <u>JURY TRIAL DEMAND</u>

Plaintiff hereby demands a jury trial on all issues so triable.


Respectfully submitted, this the 29th day of April, 2022.

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**

*/s/ Victoria J. Maniatis*
Greg Coleman (*pro hac vice pending*)
James R. DeMay *(pro hac vice pending)*
Patrick M. Wallace (*pro hac vice pending*)
Victoria J. Maniatis (NY Bar No.: 2578896)
Melissa K. Sims (*pro hac vice pending*)
Blake Yagman (NY Bar No. 5644166)
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
100 Garden City Plaza
Garden City, NY 11530
Telephone: (800) 530-9800
Email: gcoleman@milberg.com
Email: jdemay@milberg.com
Email: pwallace@milberg.com
Email: vmaniatis@milberg.com
Email: msims@milberg.com
Email: byagman@milberg.com


**STEIFMAN LLP**

*/s/ Michael Steifman*
Michael Steifman, Esq. (MS-8216)
(*admission pending*)
Steven P. Knowlton, Esq. (SK-2429)
STEIFMAN LLP
292 Montauk Highway
South Hampton, New York 11968
Telephone: 718-645-4100
Email: ms@steifmanlaw.com
Email: sknowlton@steifmanlaw.com