UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

S.A.M. MANAGEMENT CO., INC., d/b/a HOFFMAN MANAGEMENT, 122nd STREET, LLC, *and* 150 WEST BURNSIDE, LLC, *individually and on behalf of all others similarly situated*,

                Plaintiffs,

– *against* –

CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,

                Defendant.

**OPINION & ORDER**

22-cv-03494 (ER)

---

RAMOS, D.J.:

      S.A.M. Management Co., Inc., d/b/a Hoffman Management, 122nd Street LLC, and 150 West Burnside, LLC (collectively, "Plaintiffs") bring this putative class action for injunctive relief, and monetary damages against Consolidated Edison Company of New York, Inc. ("Con Edison") for violations of New York General Business Law § 349, breach of contract, fraud by concealment, unjust enrichment, and money had and received. Doc. 22. Plaintiffs allege that Con Edison has been improperly charging customers a gas rate under the wrong rate classification of its gas tariff.

      Before the Court is Con Edison's motion to dismiss the First Amended Complaint ("FAC") for lack of subject matter jurisdiction and for failure to state a claim under Federal Rules of Civil Procedure Rules 12(b)(1) and 12(b)(6). Doc. 24. For the reasons set forth below, the motion is GRANTED.

I.     **BACKGROUND**[1]

Plaintiffs are Con Edison gas customers that own and/or manage residential apartment buildings in New York City. Plaintiff S.A.M. Management Co., Inc. d/b/a Hoffman Management ("Hoffman Management") is a corporation organized under New York law and a Con Edison gas customer for the building located at 300 West End Avenue, New York, New York, which contains 33 residential apartment units. ¶¶ 8, 52. Plaintiff 122nd Street, LLC ("122nd Street") is a limited liability company organized under the laws of New York and a Con Edison gas customer for the apartment building located at 114 E. 122nd Street, New York, New York.[2] ¶¶ 9, 64. Plaintiff 150 West Burnside, LLC ("150 West") is a limited liability company organized under the laws of Delaware and a Con Edison gas customer for the apartment building located at 150 West Burnside Avenue, Bronx, New York.[3] ¶¶ 10, 76.

Plaintiffs bring this action on behalf of a putative class of "thousands of New Yorkers" who were charged an improper, higher gas rate. ¶¶ 1, 13. The FAC alleges that "some members of the putative plaintiff class are citizens of states different from [Con Edison]" and that members of the proposed class are ascertainable via the names and addresses contained in Con Edison's business records. ¶¶ 12, 91–92. Based on Con Edison's records, about 97.4% of all current Con Edison gas and electric customers have mailing addresses within the State of New York. Flagiello Decl., Doc. 26 ¶ 7. The FAC alleges that most members of the putative class are corporate entities which own or

---

[1] Unless otherwise noted, citations to "¶ _" refer to the First Amended Complaint, Doc. 22.

[2] Plaintiffs do not provide the number of apartment units in this building.

[3] Plaintiffs do not provide the number of apartment units in this building.

manage mixed-use buildings with both a residential and non-residential component, and many of these corporate entities are citizens of states different from Defendant. ¶ 14.

Con Edison is an energy delivery company that provides gas service to customers only in the Bronx, Queens, New York, and Westchester Counties, New York. ¶ 18; *see also* Flagiello Decl., Doc. 26 ¶ 4 ("Con Edison's service territory is entirely within the State of New York.").[4] It is organized under the laws of New York with its principal office in New York, New York. ¶ 11. Con Edison provides gas service to customers pursuant to the terms and conditions of its gas tariff filed with the New York Public Service Commission (the "PSC"). ¶ 19. Pursuant to Con Edison's tariff, customers are assigned to different service classifications—which, in turn, dictate their service rates—based on eligibility requirements (including their anticipated gas use and the characteristics of their building or unit), all of which are created by Con Edison and approved by the PSC. ¶¶ 22–25. This gas tariff is part of the contract between the customer and Con Edison. ¶ 21. The service classifications assigned by Con Edison include Residential and Religious Firm Service ("SC-1"), General Firm Sales Service ("SC-2"), Residential and Religious Service ("SC-3"), and Natural Gas Vehicle Service ("SC-14"). ¶ 22.

The gas tariff provides that any use of gas by a Con Edison customer shall be billed under the SC-2 service classification unless the customer otherwise meets the criteria for gas service under either the SC-1, SC-3, or SC-14 classifications.[5] ¶ 26; *see*

---

[4] Salvatore Flagiello is a Section Manager in the Customer Operations group at Con Edison. Doc. 26 ¶ 1.

[5] The SC-1 service classification applies primarily to single-family dwellings and the SC-14 service classification applies to natural gas vehicles. ¶¶ 28–29. Neither of these service classifications are relevant here. *Id.*

3

*also* Con Edison PSC No: 9 Gas, Leaf 230.  Two tariff leaves[6]—Leaf 236(2) and Leaf 239(1)—determine a gas customer's eligibility for the SC-3 service classification.  The following customers qualify for a SC-3 classification:

> [A]ny multiple dwelling used predominately for residential occupancy where the gas is used for space heating requirements of the building, inclusive of any portions thereof which are designed for or used as a store, business office, or any other commercial or industrial activity provided that the cubical content of such non-residential space does not exceed 25 percent of the cubical content of the building.

¶ 30; *see also* Con Edison PSC No: 9 Gas, Leaf 236.  In other words, to qualify for gas service under SC-3, residential buildings must have minimal non-residential activity.

¶ 31.  A customer can be disqualified from the SC-3 rate is if any part of the building is: (1) also used to conduct non-residential activity; (2) the non-residential portion of the building is not metered separately and billed under another appropriate service classification; and (3) any "incidental nonresidential activities" conducted by occupants of the residence do not meet all of the conditions of Leaf 239(1)(a)-(c).  ¶ 33.  Those conditions are that:

> (a) the non-residential activity does not change the character or outward appearance of the residence;
> (b) the non-residential activity is performed solely by occupants of the residence; and
> (c) the non-residential activities do not require use of more than 25 percent of the floor space of the residence and, in a multi-room residence, no more than one room is reserved for the non-residential activities.

*See* Leaf 239(1)(a)(c).  In other words, the SC-3 classification is proper when there is "incidental non-residential" use conducted only by occupants of a residence of the building, that activity does not alter the outward appearance of the residence, and the

---

[6] The rates and terms of service under which Con Edison provides electric service are set forth in schedules sometimes referred to as "tariffs."  The leaves (pages) in tariffs contain the information on the rates.  Con Edison, *Rates & Tariffs*, https://www.coned.com/en/rates-tariffs/rates, (last visited Aug. 22, 2023).

4

activity does not use more than 25 percent of the floor space of the residence or more than one room in a multi-room residence. *See also* Doc. 22-1 (Con Edison, *Your Rights and Responsibilities as a Non Residential Customer*) ("[SC-3] applies to residential gas space heating used in multi-unit buildings. Incidental nonresidential gas use conducted by occupants of the residence is permitted if certain conditions are met."). Con Edison's records reflect that about 98.4% of the gas customers receiving the SC-3 rate have mailing addresses within the State of New York. Flagiello Decl., Doc. 26 ¶ 8.

Plaintiffs use their respective buildings to conduct business and non-residential activities, including operating a laundry, a maintenance shop, a parking garage, a management office, a daycare center, and stores.[7] ¶¶ 53, 65, 77. The non-residential activities conducted in Plaintiffs' buildings provide commercial revenues to the respective buildings and the non-residential uses are not separately metered. ¶¶ 54–55, 66–67, 78–79. Plaintiffs allege that they were improperly charged at the SC-3 rate by Con Edison because the gas for the space used for business or other non-residential purposes in the building is (1) not metered separately from the gas used for the residential apartment units and (2) the business or non-residential activity is not being conducted by an occupant of a residence of the building. ¶¶ 57, 69, 81. By unlawfully charging Plaintiffs under the SC-3 classification, as opposed to the SC-2 classification, Plaintiffs allege that Con Edison has been able to generate windfall revenues, as the SC-2 rate is generally more economical for the customer than the SC-3 rate. ¶¶ 42, 44.

---

[7] At the pre-motion conference held on August 11, 2022, counsel for Plaintiff acknowledged that the laundry, parking, and maintenance facilities are for the use of residents in Hoffman Management's building. Pre-motion Conference Tr. at 7:8–17, Doc. 27-1.

Hoffman Management commenced this action on April 29, 2022. Doc. 1. On August 11, 2022, a pre-motion conference was held in anticipation of Con Edison's motion to dismiss. Hoffman Management filed the FAC on August 26, 2022, adding Plaintiffs 122nd Street and 150 West Burnside. Doc. 22. The FAC asserts claims for violations of New York General Business Law § 349, breach of contract, fraud by concealment, unjust enrichment, and money had and received. ¶¶ 98–130. It seeks certification of a class defined as "all Con Edison customers in the State of New York" that have been improperly charged an SC-3 gas rate rather than an SC-2 gas rate at any time within the applicable limitations period. ¶ 88. Federal jurisdiction is premised on the Class Action Fairness Act ("CAFA"). 28 U.S.C. §1332(d). Con Edison moved to dismiss the FAC on September 15, 2022. Doc. 24.

## II.  LEGAL STANDARD

### A.  Rule 12 (b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case. Fed. R. Civ. P. 12(b)(1). The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings...." *Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true but does not draw inferences from the complaint favorable to the

plaintiff. *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).

### B. Rule 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielson v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly,* 550 U.S. at 570; *see Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits'" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

### III. DISCUSSION

#### A. Subject Matter Jurisdiction

Con Edison argues that the Court lacks subject matter jurisdiction because the FAC includes only state law claims and fails to allege complete diversity of citizenship. Doc. 25 at 15; *see also* ¶¶ 8–11. Plaintiffs allege that "some members" of the putative class are non-New York citizens, and therefore under CAFA, the exercise of jurisdiction is proper in this District. ¶ 12; *see also* Doc. 29 at 14. "CAFA provides the federal district courts with original jurisdiction to hear a class action if the class has more than 100 members, the parties are minimally diverse, and the matter in controversy exceeds the sum or value of $5,000,000." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (citing 28 U.S.C. §§ 1332(d)(2), (d)(5)(B)). Parties are "minimally diverse" under CAFA "where at least one plaintiff and one defendant are citizens of different states." *Blockbuster Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006) (citing 28 U.S.C. § 1332(d)(2), (5)(b), (6)). Con Edison argues that there are two statutory exceptions that require this Court to decline jurisdiction—the home state exception and the discretionary exception. Con Edison, the party seeking to apply an exception to CAFA jurisdiction, carries the burden of proving that such an exception is warranted. *See Hess v. Bed Bath & Beyond Inc.*, No. 21 Civ. 4099 (JLR), 2023 WL 404384, at *6 (S.D.N.Y. Jan. 25, 2023) (quoting *Anirudh v. CitiMortgage, Inc.*, 598 F. Supp. 2d 448, 451 (S.D.N.Y. 2009)).

Under the home state exception, "[a] district court shall decline to exercise jurisdiction [if] two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). There is no dispute that Con Edison, the

sole defendant, is a New York company serving only customers located in New York, pursuant to New York tariffs.  ¶¶ 11, 18–19.  Accordingly, Con Edison need only establish that two-thirds or more of the putative class members are New York citizens for the home state exception to apply.  Under the discretionary exception, federal courts may decline jurisdiction over inherently state-specific disputes where between one-third and two-thirds of the members of the putative class are citizens of the same state as the primary defendants.  28 U.S.C. § 1332(d)(3).  Consequently, Con Edison must establish that between one-third and two-thirds of the members of the putative class are New York citizens and that this is an inherently state-specific dispute for the discretionary exception to apply.

The Court finds that Con Edison has easily met its burden to assert that both the home state and discretionary exceptions apply.

"The mover … may use affidavits and other materials beyond the pleadings themselves in support of… a challenge to subject matter jurisdiction." *Anirudh v. CitiMortgage, Inc.*, 598 F. Supp. 2d 448, 450 (S.D.N.Y. 2009) (quoting *Giovanniello v. N.Y. Law Publ'g Co.,* No. 07 Civ. 1990 (HB), 2007 WL 2244321, at *2 (S.D.N.Y. Aug. 6, 2007).  Con Edison presents evidence that every service address is located in New York City and Westchester County because that is its service territory.  Flagiello Decl., Doc. 26 ¶ 4.  Further, the vast majority—97.4 percent of its gas and electric customers and 98.4 percent of its SC-3 gas customers— have New York mailing addresses.  *Id.* ¶¶ 5, 7–8.  Courts may make "reasonable assumptions" when assessing the applicability of CAFA's jurisdiction exceptions.  *See Commisso v. PriceWaterhouseCoopers LLP*, No. 11 Civ. 5713 (NRB), 2012 WL 3070217, at *4 (S.D.N.Y. July 27, 2012) (collecting cases).  Further, "[i]t is reasonable to assume that the vast majority of individuals and entities would choose to receive bills where they are domiciled." *Int'l House v. Consol. Edison*

9

*Co. of N.Y., Inc.*, No. 22 Civ. 8705 (VEC), 2023 WL 2898623, at *4 (S.D.N.Y. Apr. 11, 2023); *see also Simmons v. Ambit Energy Holdings, LLC*, No. 13 Civ. 6240 (JMF), 2014 WL 5026252, at *4 (S.D.N.Y. Sept. 30, 2014) (concluding that CAFA's local controversy exception, which also only applies if two-thirds or more of the class members are citizens of the forum state, was triggered in part because putative class members purchased electricity for residential services in New York); *Richins v. Hofstra Univ.*, 908 F. Supp. 2d 358, 363 (E.D.N.Y. 2012) (the court considering the most recent mailing address in New York as "highly probative" of whether or not members of the class are citizens of the State of New York).

Thus, Plaintiffs' argument that evidence of a New York mailing address is not proof of New York citizenship and is merely speculation is of no moment. Doc. 29 at 14. Plaintiffs cite two cases to support their claim. In both *Smith v. Manhattan Club Timeshare Ass'n, Inc.* and *Henry v. Warner Music Grp. Corp.*, plaintiffs originally brought their action in state court and defendants removed the case to federal court. In moving to remand the action to state court, plaintiffs argued, in part, that jurisdiction was improper in federal court because the home state exception to CAFA applied.

In both cases the court held that the home state exception had not been established because the plaintiffs in these cases proffered *no evidence* regarding the citizenship of the putative class members. *See Smith v. Manhattan Club Timeshare Ass'n, Inc.*, 944 F. Supp. 2d 244, 252–53 (S.D.N.Y. 2013) (holding that plaintiff's contention that most timeshare interest holders are citizens of the State of New York who do not otherwise reside in the City of New York was pure speculation); *see also Henry v. Warner Music Grp. Corp.*, No. 13 Civ. 5031 (PGG), 2014 WL 1224575, at *5 (S.D.N.Y. Mar. 24, 2014)

(refusing to credit "rank speculation" of plaintiff's assertion that "the majority of the putative class members are presumed to be residents of the State of New York.").

In the instant case, Con Edison provides evidence that nearly all of the SC-3 customers are billed at a mailing addresses in New York. Indeed, in *Henry,* the court found in favor of defendants on the basis of residency records they maintained that showed that at least 45% of the putative class members were citizens of states other than New York. *Id.*

Next Plaintiffs argue that mailing addresses are irrelevant as to the non-natural class members (i.e., corporations and unincorporated entities, whose citizenship is determined through its state of incorporation or its principal place of business). Doc. 29 at 15. While it is true that corporations, like Hoffman Management, are citizens of the state of their principal place of business[8] and limited liability companies, such as 122nd Street and 150 West, take on the citizenship of each of their members, *Techno-TM, LLC v. Fireaway, Inc.,* 928 F. Supp. 2d 694, 695–96 (S.D.N.Y. 2013), courts may still consider the mailing address of such entities. *Intl House v. Consol. Edison Co. of New York, Inc.*, 2023 WL 2898623 at *4 (concluding that "it is reasonable to assume that the vast majority of … entities would choose to receive bills where they are domiciled" and "[a]lthough some of defendant's customers … may be entities incorporated and based in states other than New York, over 97 percent of defendant's customers have New York billing addresses."). Moreover, in their response, Plaintiffs "do[] not include any facts regarding the principal places of business or members of those entities, which may well

---

[8] *See* 28 U.S.C. § 1332(c)(1).

11

be based in New York" and were "unable to identify a single putative class member that is certainly not a New York citizen." *Id.* at *4.

The putative class consists of "most[ly] … corporate entities which own or manage mixed-use buildings" and "thousands of Con Edison customers." ¶¶ 13–14. As the court in *Int'l House v. Consol. Edison Co. of New York, Inc.* held,

> Although Plaintiff[s] could conceivably establish that fewer than one-third of the putative class members are New York citizens if the class were restricted to its entities, the putative class includes Defendant's residential customers, the overwhelming majority of whom (like most Americans) do not have second homes, and who, in any event, would likely not have a New York billing address if the service address were not the domicile of the customer.

*Int'l House v. Consol. Edison Co. of New York, Inc.*, 2023 WL 2898623 at *4 n.7. Moreover, Plaintiffs themselves recognize that many putative class members are "typically located in the general vicinity of the building" they own or manage. Doc. 29 at 15.

But even if only one-third of the putative class were comprised of New York citizens, the Court may decline to exercise jurisdiction under the discretionary exception, which allows a court to look at the totality of the circumstances in which more than one-third but less than two-thirds of the putative class members, and the primary defendants, are citizens of the state in which the action was originally filed. 28 U.S.C. § 1332(d)(3). Under the discretionary exception to CAFA, courts consider:

> (A) whether the claims asserted involve matters of national or interstate interest; (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States; (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction; (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants; (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate

> is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

*Id.* First, for the reasons discussed above, the Court has already held that the putative class consists of more than *two-thirds* New York citizens. Secondly, Con Edison "need not satisfy all factors," instead "a balancing test should be applied taking into consideration the totality of the circumstances." *Sorrentino v. ASN Roosevelt Ctr., LLC*, 588 F. Supp. 2d 350, 359 (E.D.N.Y. 2008). On balance, the factors weigh in favor of dismissal, as this case concerns a New York company allegedly overcharging New York customers under New York Law, who live in buildings located in New York. *See Int'l House v. Consol. Edison Co. of New York, Inc.*, 2023 WL 2898623 at *5 (declining to exercise jurisdiction under the discretionary exception because "[t]his case is about a New York company's alleged practice of overbilling New York customers for utility services solely provided in New York pursuant to Tariffs filed with New York's Public Service Commission in contravention of New York law"); *see also Mattera v. Clear Channel Commc'ns, Inc.*, 239 F.R.D. 70, 81 (S.D.N.Y. 2006) (also declining to exercise jurisdiction because the claim was "governed by New York law . . . on behalf of persons working in New York, challenging a charge back policy in effect in New York that is in contravention of New York law").

### B. Con Edison's Other Claims

Con Edison also argues that dismissal would be warranted under the primary jurisdiction doctrine, the file-rated doctrine, and for failure to state a claim, Doc. 25 at 10, but the Court need not consider these arguments. The Court's lack of subject matter jurisdiction

13

is dispositive in its dismissal of the case. Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case. *See Mason Tenders Dist. Council of Greater New York and Long Is. v. CAC of New York, Inc.*, 46 F. Supp. 3d 432, 435 (S.D.N.Y. 2014).

### IV. CONCLUSION

For the foregoing reasons, Con Edison's motion is GRANTED and the FAC is dismissed for lack of subject matter jurisdiction. The Clerk of Court is respectfully directed to terminate the motion, Doc. 24, and close the case.

It is SO ORDERED.

Dated:  September 11, 2023
        New York, New York

                                                          EDGARDO RAMOS, U.S.D.J.